**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ROBERT ARMSTRONG WHITE, | * | |
| Petitioner | * | |
| v | * | Civil Action No. RDB-18-1970 |
| WARDEN, | * | |
| Respondent | * | |

\*\*\*

## MEMORANDUM OPINION

Self-represented petitioner Robert Armstrong White seeks vacatur of his convictions for first degree rape and robbery in the Circuit Court for Montgomery County, Maryland, pursuant to 28 U.S.C. § 2254 on the ground of ineffective assistance of counsel. (ECF No. 1). Respondent argues in his Answer that White's claims should be denied for lack of merit. (ECF No. 17). White filed a Reply in opposition. (ECF No. 20).

A hearing is not necessary to resolve the matters pending. *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts and Local Rule 105.6 (D. Md. 2016); *see also Fisher v. Lee*, 215 F. 3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons stated below, the Petition will be denied and a certificate of appealability shall not issue.

### BACKGROUND

White is convicted of raping two women, "TK" and "EL" in separate incidents in Montgomery County, Maryland in 1979. Approximately 30 years later after the investigation went cold, the Montgomery County Police Department reopened the cases, sent semen samples

collected in each case for DNA testing, and the samples matched White's DNA profile in the Combined DNA Index System of known offenders. (ECF No. 17-1 at 168, 170-71).

In one indictment, the State charged White with the two separate incidents. White requested, and the State agreed, that each case be tried separately. The cases were tried under the same case number with one set of docket entries before two different judges. (ECF No. 17-1 at 170-71).

On March 23, 2012, with the Honorable Mary Beth McCormick presiding, White was convicted by a jury of two counts of first degree rape and one count of robbery of victim "TK." Judge McCormick sentenced White on May 30, 2012 to two consecutive terms of life in prison for the rapes, and a ten years consecutive term for the robbery. (*Id.* at 171, 175, 179).

On April 13, 2012, the Honorable Robert Greenberg presided over a jury trial that convicted White of two counts of first degree rape, one count of first degree sexual offense, and one count of kidnapping of victim "EL." On May 30, 2012, Judge Greenberg sentenced White to life in prison for two counts of first degree rape, life in prison for first degree sexual offense, and thirty years for kidnapping with all sentences to run consecutively to each other and consecutive to any previously imposed sentence. (*Id.* at 175, 179).

On June 28, 2018, White filed this § 2254 Petition challenging the judgment of conviction for the rape and robbery of TK. (ECF No. 1 at 1, 5, 7). White filed a separate § 2254 Petition attacking the judgment of conviction for the rape and robbery of "EL." *White v. Warden*, RDB-18-1969 (D. Md). The procedural facts underlying the ineffective assistance of counsel claim in both cases are substantially the same.[1]

---

[1] Neither party moved for consolidation of the cases.

**FACTUAL AND PROCEDURAL HISTORY**

**I.  Direct Appeal**

White, by his counsel, filed a joint appeal of both cases.  The questions presented on direct appeal were: (1) Did the trial court err in denying White's Motion to Dismiss based on his right to a speedy trial under the Maryland Intrastate Detainer Act ("MIDA");[2] Maryland Rule 4-271 (*Hicks* rule);[3] and the Sixth Amendment; (ECF No. 17-1 at 44, 79-102); (2) Did the trial court err in admitting testimony via video conference in violation of White's confrontation rights; and (3) Did the trial court err in allowing the state to make improper and prejudicial statements at closing argument.  *White v. State*, 223 Md. App. 353 (2015).   In a consolidated opinion, the Court of Special Appeals of Maryland, affirmed both judgments of conviction.  *Id.*

Only the first question presented on appeal is relevant to White's federal habeas petition. In rejecting the claim, the Court of Special Appeals explained that:

> The State initially obtained a district court statement of charges on November 23, 2010.  A warrant was issued.  [White] was incarcerated at the time of the charges, so the warrant automatically converted into a detainer.  But [White] was never served with the arrest warrant because the State entered a nolle prosequi ("nol pros") on April 15, 2011, claiming that due to the unavailability of a witness, the State could not go forward with the case.  [White] disputes the State's ground for entering the nol pros contending instead, that the State filed the nol pros to circumvent the *Hicks* rule.  The State obtained a new statement of charges, warrant, and detainer on July 22, 2011.

(*Id.* ECF No. 17-1 at 180).  The Court of Special Appeals noted the undisputed operative dates.

---

[2] Maryland's Intrastate Detainer Act, Md. Code Ann., Corr. Servs. §§ 8-501 thru 8-503 (LexisNexis 2008) ("MIDA").

[3] *State v. Hicks*, 285 Md. 310, 318 (1979). State v. Hicks, 285 Md. 310, 318 (1979). Under State statute and related court rule, collectively known as the "Hicks rule," a criminal trial in a circuit court must commence within 180 days of the first appearance of the defendant or defense counsel in that court, a deadline known as the "Hicks date." Unless the defendant consents to a trial date beyond the Hicks date, a continuance of the trial beyond the Hicks date may be granted only for "good cause." *Tunnell v. State*, 466 Md.565, 569 (2020).

November 23, 2010: The district court issued a statement of charges and an arrest warrant/detainer, because White was serving a sentence on an unrelated conviction at that time.

February 1, 2011: The State received [White's] request for disposition under [M]IDA.

April 15, 2011: The State entered a nolle prosequi, or "nol pros" as to the statement of charges.

April 19, 2011: The arrest warrant/detainer was recalled.

July 22, 2011: The district court issued a statement of charges (relating to the same charges) and an arrest warrant/detainer.

August 31, 2011: The arrest warrant was served on [White], and [White] appeared before the district court.

September 29, 2011: The State filed an indictment in the circuit court.

*See White,* 223 Md. App. at 364–67 *see also* ECF No. 17-1 at 181. The Court of Special Appeals explained that the MIDA provides "[a]n inmate shall be brought to trial within 120 days after the inmate has delivered a written request for a final disposition of the indictment, information, warrant, or complaint" to the State's attorney and the appropriate court. [Corr. Servs.] § 8–502(b). If a case is not brought to trial within 120 days, then "the untried indictment, information, warrant, or complaint has no further force or effect" and "the court, on request of the inmate or the inmate's counsel, shall enter an order dismissing the untried indictment, information, warrant, or complaint *without prejudice*." [Corr. Servs.] § 8–503(e) (emphasis added). (ECF No. 17-1 at 182).

Against this background, the Court of Special Appeals summarized the trial court ruling:

The circuit court found that the State did not violate [MIDA] because the State received [White's] request for disposition on February 1, 2011 and, within the required 120–day timeframe, disposed of [White's] case by nol prossing the charges. We agree. **[White] did not file a request for disposition for the second detainer filed against him on July 22, 2011. Therefore, the only detainer at issue is the first detainer filed on November 23, 2010**. As to the first detainer, [White] properly requested final disposition under [MIDA], and the State received this request on February 1, 2011. The State thereafter entered a nol pros for the

4

> November 23, 2010, charges on April 15, 2011, and the detainer was revoked on April 19, 2011. Based on these facts, the detainer was "disposed of" within 120 days of [White's] request.
>
> Even if the State had filed the nol pros after 120 days, the relief that would have been afforded for such a violation was already provided: a dismissal without prejudice. *See Gilmer v. State*, 389 Md. 656, 670, 887 A.2d 549 (2005) ("Obviously the type of nolle prosequi which does not bar future prosecution under another charging document has the same effect as a dismissal without prejudice." (quoting *State v. Morgan*, 33 Md. 44, 46 (1870))).

*White*, 223 Md. App at 372-74. (ECF No. 17-1 at 182-183) (emphasis supplied). White did not pursue review in the Court of Appeals of Maryland.

## II.  Post Conviction Proceedings

On December 9, 2015, White filed a Petition for Post Conviction Relief *pro se* in the Circuit Court for Montgomery County, challenging both judgments of conviction. (ECF No. 17-1 at 218-222). White alleged that trial counsel was constitutionally ineffective for "refus[ing] to raise a violation of [MIDA], MD Rule 4-217, and the Sixth Amendment right to a speedy trial as Mr. White requested before his first trial started in March [2012]." (*Id.* at 220). White alleged that he had in fact, contrary to the finding of the Court of Special Appeals, filed a request for disposition of the second detainer against him on July 22, 2011, which contained the charges on which he was ultimately convicted. (*Id.*). According to White, he "signed and submitted [a MIDA] request to the warden . . . on 8-2-11." (*Id.*).

On February 2, 2017, White, assisted by counsel, filed a Supplemental Petition for Post Conviction Relief. Relevant here, the Supplement Petition provided:

> The Petitioner contends that at the time the second statement of charges were issued on July 22, 2011, he was incarcerated at the North Branch Correctional Facility (NBCI) in Cumberland, Maryland, that he filled out the paperwork to request a speedy disposition of the Intrastate detainer on August 2, 2011, that his request was received by the District Court for Montgomery County and the Office of the State's Attorney on August 16, 2011, and that copies of this paperwork were included in his "base file" at NBCI. A copy of these documents are attached to this petition.

5

> The Petitioner further contends that he had little contact with his trial attorney since he was incarcerated in Cumberland for the majority of the time his trials were pending but that he did tell his counsel that he had filed a second request for a speedy disposition of the charges, that he had copies of the paperwork documenting his request in his possession but that he told his attorney he wanted the attorney to obtain a copy for himself by contacting NBCI.  The Petitioner alleges that based upon the paperwork documenting his request for a speedy disposition of his charges/detainer dated August 2, 2011, his attorney should have pursued a motion to dismiss the charges due to the State violating the one hundred and twenty day requirement of the IAD prior to both of his trials and that the failure to do so constitutes ineffective assistance of counsel.

(*Id.* at 224-25).  The Supplemental Petition was filed with copies of MIDA paperwork from White's base file at North Branch Correctional Institution ("NBCI"), including a Notice of Intrastate Detainer placed on July 22, 2011, and an unsigned request for disposition of the July 22, 2011 charges. (*Id.* at 228-31).  On the documents titled "Request for Disposition of Intrastate Detainers" the Warden wrote a note on the inmate signature line that "inmate refused to sign or acknowledge [right to] counsel." (*Id.* at 231).  As Respondent accurately notes, the unsigned request for disposition of charges bears no date stamp to confirm its receipt by the State's Attorney or the court.  (ECF No. 17 at 17).  A third document consists of a computer printout of White's offense information, signed by White, and dated August 2, 2011.  A line is checked next to the preprinted statement " I wish to file for a fast & speedy trial" although the witness signature line is blank. (ECF No. 17-1 at 229).

On May 31, 2017, the Circuit Court for Montgomery County conducted a post conviction hearing at which White represented himself, after he discharged his counsel. (ECF No. 17-12 at 4-16).  White argued that the Court of Special Appeals' opinion relied on the mistaken belief that he had not filed a MIDA request for final disposition of the July 22, 2011 charges. (*Id*. at 20-24, 33).

White's trial counsel testified at the hearing that he filed motions to dismiss for an IAD violation based on the first detainer and for a speedy trial, and had filed a memorandum arguing

the State entered the nolle prose to "circumvent the 180-day rule [under *Hicks*]." (*Id*. at 31-32). Trial counsel added "And I am certain that I can say to you that I thought, by filing the motion to dismiss for speedy trial, that I was getting you greater relief than you would have been entitled to under IAD." (*Id*.). Trial counsel also testified that he had no independent knowledge of a second request for disposition of charges or recalled White asking him to check his base file at NBCI. (*Id*. at 30-32).

The Circuit Court denied post conviction relief in a ruling from the bench later adopted by reference in a July 20, 2017 written order. (*Id.* at 55-61; ECF No. 17 at 239). The Circuit Court ruled that White had not met his burden to show deficient representation and prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984), explaining that relief for a MIDA violation is only in dismissal of charges without prejudice. Thus, White had not shown that but for counsel's alleged error, the outcome of the proceedings would have been different. (ECF No. 17-12 at 55-61).

The Court of Special Appeals denied White's Application for Leave to Appeal on November 7, 2017. (ECF No. 17-1 at 244-46).

**III. Section 2254 Petition**

White claims trial counsel provided constitutionally ineffective assistance of counsel by "misinforming" the court that White had not filed a request for disposition of the specific charges for which he was ultimately convicted, which were the subject of a detainer that the State had filed under the Maryland's Intrastate Detainer Act ("MIDA"), Md. Code Ann., Corr. Servs. §§ 8-501 thru 8-503. (ECF No. 1 at 5). Second, White alleges that, because the prosecutor's file documented the existence of a pertinent request for disposition, the prosecutor engaged in

"misconduct" by allowing defense counsel's representation to the court to go uncorrected. (ECF No. 1 at 7)

## STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings" *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall*, 572 U.S. 415, 419-20 (2014), quoting *Harrington v. Richter,* 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

8

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington,* 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 559 U.S 766, 773 (2010).

## ANALYSIS

Analysis of an ineffective assistance of counsel claim in a federal habeas proceeding is "doubly deferential." *Valentino v. Clarke*, _F.3d_ 2020 WL 5034418 at *14 (4th Cir. August 26, 2020) (quoting *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009)). A federal habeas court must review the claim under the habeas statute and the "highly deferential" lens of *Strickland*. *Owens v. Stirling*, 967 F.3d 395, 411 (4th Cir. July 22, 2020) (quoting *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012)).

To prove ineffective assistance of counsel, a petitioner must demonstrate both deficient performance and prejudice. *Strickland,* 466 U.S. at 687. "Deficient performance requires showing

9

'that counsel's representation fell below an objective standard of reasonableness,' as measured by 'prevailing professional norms' and in light of 'all the circumstances' of the representation." *Owens*, 967 F.3d at 412 (4th Cir. 2020) (quoting *Strickland*, 466 U.S. at 688).  To satisfy this high bar, the burden is on the petitioner to establish "'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).  The Supreme Court has emphasized that courts should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered a sound trial strategy." *Id.* at 689.  In the context of a § 2254 proceeding, it is not sufficient to convince the federal habeas court that the state court merely applied *Strickland* incorrectly. Rather, a petitioner must meet a higher burden and show that the state court applied Strickland in an objectively unreasonable manner.  *See Bell*, 535 U.S. at 698–99.

For the prejudice prong, a court must consider whether "a reasonable probability" existed that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  A petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id.* at 696.

White claims his trial attorney provided constitutionally ineffective assistance of counsel in violation of his rights under the Sixth Amendment to the Constitution by failing, despite White's request, to check his base file and to file a pretrial motion to dismiss under Maryland's Intrastate Detainer Act. (ECF No. 1 at 5).  White asserts that had trial counsel filed such a motion, "it would have prevented the rendition and entry of the judgment questioned." *Id.*  In denying this claim,

the post conviction court reasoned that even if trial counsel had inaccurately represented there was no request for disposition of the charges, the only remedy for failure to try charges subject to a MIDA request is dismissal of the charging document without prejudice. Given the serious nature of the charges against White and the DNA evidence, it was likely that the charges would be refiled. Even if counsel were assumed to be incorrect about the existence of the MIDA request, *Strickland* does not compel pursuit of a motion which at most posed the possibility the serious charges substantiated by DNA evidence would be dismissed without prejudice and refiled by the State. White has failed to carry his burden to show that his trial was unfair or that the outcome of the proceedings would have been different.

In his Reply, White states that he filed two return receipts, or "green cards," returned to him by the U.S. Postal Service with his Supplemental Petition for Post Conviction Relief, but were in the state record. (ECF No. 18). One card was addressed to the Montgomery County District Court, signed as received by "Frank J. Bienes," and dated as received on August 15, 2011. The second was addressed to the Montgomery County State's Attorney, and signed by Terrie L. Hodson as received on August 16, 2011. (*Id*. at 5, 6). White does not assert, nor does the record show that he introduced the cards in evidence, elicited testimony about the cards, or otherwise presented evidence his attorney had independent knowledge of these cards or a second request for a disposition of the charges. And, for reasons discussed above, this information fails to demonstrate how trial counsel's representation caused him prejudice.

The post conviction court's determination that White had not sustained his burden under *Strickland* is neither "contrary to . . . clearly established federal law, as determined by the Supreme Court of the United States," nor is it based on an "unreasonable determination of the facts in light

of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The state court decision survives scrutiny under federal habeas review, and federal habeas relief is denied.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U. S.C. § 2253(c)(2); *see Buck v. Davis*, 137 S.Ct. 759, 773 (2017). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El* 537 U.S. at 327. Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. *See* 28 U.S.C. § 2253(c)(2). White may request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

## CONCLUSION

For the reasons discussed above, the Petition for a Writ of Habeas Corpus will be DENIED. The Court declines to issue a certificate of appealability. A separate Order follows.

   9/15/2020                                              /s/
Date                                               RICHARD D. BENNETT
                                                      UNITED STATES DISTRICT JUDGE